Good morning, counsel. Can you please state your name? Michael Orenstein, your honor. State appellate defender for Defendant Appellant Ricky Nelson. Good morning. You may begin. Thank you, your honors. Your honors, I'd like to address the issues in order. As to Foundation, this case is controlled by People v. Rainey and People v. Willington analysis of People v. Rainey. In Rainey, a chemist put a substance into a machine. The machine tested positive for drugs. Over a Foundation objection, she disclosed the results. This court reversed on Foundation grounds. The expert, Rainey had said, merely regurgitated the machine's readout. So at the very least, the state needed some testimony that her machine was functioning properly. Now, Williams distinguished Rainey because the Williams expert did not merely regurgitate results generated by the machine. Rather, she made an independent evaluation of another state's data. And she knew this followed guidelines, including calibration, that she had created. As in Rainey and unlike in Williams, here the ISP witnessed merely regurgitated results generated by the machine and did not make an independent evaluation. Now, the state argues that she did say that her machine was working, but the state case takes this testimony out of context. There's three points. Starting on page 111 of the transcript, the first point was in the context of contamination. She was asked if she took steps to avoid contamination. She said yes. She used a clean technique and went on to describe that in detail. And as part of that technique, she said she tested her instruments and her agents were working properly. All that was to show no contamination. It didn't address Rainey's concern about a functioning, calibrated machine. The second point was on page 115 of the transcript where she said what she actually did. She described in detail three steps she did. Extraction of DNA, quantification of DNA, and amplification of DNA. All those things were to prepare the DNA for testing. So she talked about those things, but when she talked about the actual testing, she just put the sample into a machine and got a result. The third point was on redirect on page 139. She was asked about quality control measures addressing contamination. And again, she said there was no contamination because she ran positive and negative controls. So none of this addressed the foundational question posed in Rainey. Is the machine calibrated? So unless there are questions on this issue, I will go to the second issue. So tell me exactly what you say was missing from the foundational question. What was missing is something indicating that the machine was tested and calibrated and was a good working order. Now, there's lots of ways you could do this. She could say, well, I calibrated the machine and it was a good working order. She could say I checked the log book and it was calibrated. She could say what the expert in Williams said was that, well, I'm aware of the procedures. I know the procedures are followed and the procedures require calibration. There's lots of ways she could have addressed it. But again, when you're essentially testifying for the machine and not doing your own independent evaluation, you need something showing that that machine is working. And it could be any number of things. But there were none of those things here. I mean, you seem to be attacking it on different ways. Okay. You said that from the briefs you seem to be saying you're not sure about the computer generate. I'm using the term computer and machine in the same thing. The machine that you put the sample into and then it tells you, it gives you a DNA measurement. So when I say computer and machine, I mean the same thing. There's also another computer calculation where they take the data from the machine or from, in Williams, the analyst, and give you a number and compare that. And that's where you say one trillion. That's like a calculator. But I'm talking about the machine that measures the DNA strands. Yeah, because at one point in reading the briefs, it seems you were challenging the computer-generated comparison. Well, I'm not challenging comparison. I'm challenging the machine measurement of the DNA is what I'm challenging. Well, I'm challenging the machine giving you the data from which it is compared. The machine tells you that the DNA strands and the length of the strands determines whether the DNA are the same or different, and the machine measures the strands. And that's what I'm challenging, that there was no showing that that was working. I noticed you made an objection, a foundational objection, to the DNA evidence at trial. That's true. Did you raise it in your supplemental or original post-trial motions during the trials? I'm sorry. Can you say that again? Did you raise it in either your original or supplemental post-trial motion? No. It is forfeited, and we're raising it. It was raised at trial. It is forfeited because it was not raised in the post-trial motion. So you want us to address it under plain air? I'm playing it. That's correct. You want us to address it on plain air on the first bomb? Yes, thank you for clarifying. It's a first bomb. Somehow it's this closely balanced in light of the fact that his blood was found on the window. Because if we are correct, then his blood would not have come into evidence because there would have been no foundation. The fact that his fingerprints were found would have come into evidence. His fingerprints would have come into evidence. However, there's a difference. for the blood between when the workers left and the window was broken. But as far as the fingerprint, it was either a several-day window or far more than that, depending on how you read the testimony. There was testimony that a few days before the window jam and the window lock was fixed. It's not clear from my reading whether the plate glass was replaced. If it was replaced, then there's a several-day window. If it was not replaced, then there's an indefinite window. That doesn't explain how his fingerprints got on the window. It's a burger. It does not explain it. That is true. Obviously, it's not the defendant's burden to prove his innocence. There's no question. They proved there were his fingerprints on the window that was broken, in the apartment that was burglarized. Outside. That's circumstantial evidence. The jury is entitled to hear that. The jury is absolutely entitled to hear that. But I would say that the jury would be much less likely to have decided that if they hadn't gotten the DNA evidence, which is considered very persuasive to jurors. And especially, cumulatively, if they had not gotten the DNA evidence and the other crimes evidence, which I'll turn to with this court's permission. So the state used impermissible propensity evidence against Nelson. Other crimes evidence could deny the defendant a fair trial. It undermines presumption of innocence, and it causes juries to convict based on character.  But it can't be used to show that he did it before, so he must have done it now. And it can't be used when it's thought, well, it's just marginal. Both problems happen here. The jury heard that my client had committed previous copper pipe burglaries. This admission was so general, it can only go to character. And it certainly did not go to intent. There was no dispute that this was a burglary, and whoever burglarized, whoever broke it had the intent to steal this copper pipe. That's the legal definition of intent, and it wasn't an issue. Now, in this case, it's controlled by people who've clarked. When clarked, the defendant was accused of stealing a bike. The state brought out evidence that he had stolen a bike before. Why are you saying the intent was not an issue? Because in this context, when people consider other crimes evidence as far as intent, the intent is the intent of the perpetrator, not the intent of the defendant. There's no question that a burglar went in there and he broke into a stolen copper pipe. That's what all the evidence clearly shows. Our client's defense was he was not that person. So when you're looking at intent, you're looking at the apus reus, the criminal act. Did the person who did the criminal act have the intent? I think there's no question that if he was the person who broke in, he had the intent. I think it was clear to the jury, and the question was, was he the person? The counsel argued that he was not the person. And that's a situation in clarking. And in one way, they talk about that, that if it's clear that whoever did the crime had the intent, then for other crimes purposes, intent is not at issue. So at the same time, the defendant was accused of stealing a bike. The state brought up that he had stolen a bike before. Having nothing more than that to qualify proper propensity evidence, substitute copper pipe for bike, and this case goes together. So as you know, Justice Hoffman, there is other evidence in this case, and the state argues that it is circumstantial evidence. You must also consider the strength of the improper evidence when weighing the evidence. In terms of harmless error as to the other crimes evidence that was presented, or communively as it's plain as to both of them. If the state argues that the fingerprints on the windowpane is sufficient circumstantial evidence, if the jury believes it to convict, then the other crimes evidence proves the intent to commit a theft therein. So it is relevant if the jury buys the argument that the circumstantial evidence is sufficient to connect him to the crime. So it is good for intent. So the argument has to rest, it can't rest on the argument of the other crimes evidence. It has to rest on whether the DNA evidence was improper, and whether the fingerprint evidence in the absence of DNA evidence is sufficient to find him guilty. Intent. I don't think. Excuse me. Fingerprint evidence was introduced to prove he was the perpetrator. That is true. And if he was the perpetrator, then the other crimes evidence is sufficient to establish the intent to commit a theft therein. So it's not a basis for reversal. It is only relevant if they fail to introduce any evidence that he was the perpetrator. Once you've got evidence that he's the perpetrator, the other crimes evidence comes in for intent. Unless, of course, you want to argue that the prejudicial effect outweighs the value of the evidence. That's a different argument. Well, I would certainly raise that argument, that the perpetrator value in light of the fact that we know that whoever the burglar was, that whoever broke in was a burglar, it was so marginal that the prejudice outweighed it. That would be the first thing. The second thing I would say is that the jury could have decided that fingerprint evidence alone convicted, or could have decided that fingerprint alone did not convict him. The state didn't raise this, but there are certainly sufficiency cases that we have won where there's nothing but a fingerprint. And the third thing I would point out is strictly as far as the other crimes evidence, that falls under harmless error and not plain error. And the state has to prove that without the other crimes evidence. I suppose there's no error at all. Well, if there's no error at all, then there's no basis for reversal. Well, there is no basis for reversal on the other crimes evidence, unless you're arguing prejudicial effect outweighs probative value. I'm arguing that too. But what I'm trying to explain to you, you don't seem to understand, is once the state introduced some evidence that he was the perpetrator, then they're entitled to, because remember, the handprint was on the outside, now they're entitled to introduce evidence that he intended to commit a theft therein. That makes perfect sense. So your argument has to hinge on insufficient evidence to prove that he's a perpetrator. Because if there's evidence to prove he's a perpetrator, if it's believed, then intent comes in. It's relevant. Unless prejudicial value outweighs the probative value. Well, I would certainly be arguing the alternative. Prejudicial value does outweigh probative intent. The probative intent, the probative value, I'm mixing my words up, the probative value is extraordinarily marginal in light of the fact that we know that whoever the perpetrator was is a person who, even if it broke in, was the burglar. And so, again, I think the law also says you don't only consider the strength of the state's evidence, you consider the strength of the improper evidence. And certainly, you know, I think every member of this court is in the opinion saying that propensity evidence is extremely prejudicial. So unless there are any other questions, I will ask that this court reverse and remand for a new trial. Thank you, counsel. Good morning. Good morning, Your Honors. May it please the court, I'm Assistant State's Attorney Joseph Alexander, on behalf of the people of the state of Illinois. Keep your voice up, counsel. You're competing with the LaSalle Street. Yes, ma'am. I'm going to address defendants' issues in order, as he did. Turning to that first issue about foundation, if we look at this record, the people laid a sufficient foundation for the testimony of the expert witness. When we look at foundation, the purpose of the foundational requirements isn't to elicit specific magic words. The purpose is to elicit enough testimony to ensure that the expert's conclusions are accurate, reliable, and I'm sorry, accurate and reliable to a reasonable degree of scientific certainty. When we look at the testimony of the expert witness in this case, the totality of the testimony meets those foundational requirements. Defendant focuses on the fact that the expert witness didn't testify that her machine was calibrated and functioning properly. If you listen to defendant's argument and read his briefs, you notice that he's focused on those specific words, calibrated and functioning properly. There's no case that holds that in order for an expert witness' testimony to be admissible, in order for there to be a proper foundation, that the expert has to use those words. In this case, the expert was qualified as an expert witness. She testified that her laboratory was accredited by the FBI and the Illinois State Police. She testified that she used clean techniques and ran a series of controls with every test. She also testified that she conducted performance checks on her instruments. Defendant says that under People v. Ramey, this is insufficient. But if we look at Ramey, it's more than sufficient. Because Ramey was focused on what the expert didn't say, that her machine was functioning properly. The court said that there had to be some testimony offered that the machine was functioning properly, not that the expert had to say it was calibrated and functioning properly. Those words are not necessary. And if we look at Ramey in light of People v. William, defendant talks about how the expert witness there testified that she was familiar with the ISP standards and that the equipment, the laboratory met those standards because the equipment had to be calibrated. This was an ISP, this expert testified that she followed those ISP standards. So she specifically testified that she ran a series of controls with every test, didn't she? She did. And she testified that she used both positive and negative controls to detect any contamination. Defendant focuses on that contamination, saying that that's different than the machine functioning properly. But if there is contamination, the machine isn't functioning properly because it's not doing its job because it's contaminated. So her test was to ensure that she was obtaining reliable results. So when you look at the totality of her testimony, it was more than sufficient under Ramey and under Williams to meet the foundational requirements for her expert opinions. Now turning to the second issue, defendant focuses on the intent, and he bases his argument on the fact that he Before you move to the second one, there's been some discussion that the closely, you know, if there was error, the closely balanced issue favors the defendant here. What is your argument as to that? That is absolutely not correct, Your Honor. Based on this record, this issue was forfeited, and I didn't address forfeiture because I jumped straight into the fact that there was no error. Yes. But assuming that this court finds error, the evidence was not closely balanced. We have defendant's fingerprints and his DNA evidence on this window. Even if we exclude the DNA evidence, we still have his fingerprints. We have enough circumstantial evidence to show that there's only one explanation in this case, and that is that defendant broke into this apartment and stole the copper piping. We have witnesses testifying that they were there earlier that day. The copper piping was in place. They come back. The window is broken. The copper piping is missing. The only fingerprints we found on that window was the defendant's fingerprint. We also have testimony that the defendant did not have permission to be there. Defendant was not working for the owner of the building. Based on the fact that there's nothing to indicate the defendant's fingerprints were inside the space where the copper was stolen from, that there were no fingerprints on the interior, only on the exterior? There was testimony that the officer, the forensic technician, didn't take fingerprints from the inside. He explained that the reason he didn't take fingerprints was because of the moisture, and he wouldn't have been able to get quality prints from that. So the jury heard all of this, and even with that explanation, there was still enough evidence for this evidence not to be closely balanced. When we look at closely balanced, we look at it from a common sense perspective. And common sense, under the analysis that we have to perform for the closely balanced, looking at the evidence, there were no credibility issues in this case. It was simply, what does the evidence show? And there was only one explanation for this evidence, and that was that it was a burglary committed by this defendant. Even though that evidence is circumstantial, circumstantial evidence is still sufficient evidence. And so since there were no credibility determinations, there was only one explanation from this evidence. This evidence was not closely balanced. And just as a note for the record, the defendant doesn't ask for the second bond claim letter, so that is forfeited, that is waived. And even if it wasn't, this goes to the admissibility of the testimony and not the weight, so this isn't the type of error that is contemplated under second fraud. If there are no further questions on that issue, I will go to the second issue. And as I began to defend it, it focuses on intent and says, because I never said I did or might have entered the building, because I'm saying that I didn't do it, intent isn't relevant. And so the state doesn't have to put in other crimes evidence. Burglary has intent as an element. The state has to prove that. The state is allowed to present evidence to prove every element of the defense. That's common law that is well-established law, even when the defendant pleads guilty and stipulates two certain elements, the state can still put in evidence to prove that. And that is what this case is about. The state did that. And the other crimes evidence wasn't prejudicial. The fact that the defendant says that he didn't enter the building doesn't mean that intent is not still a part of this case and not still relevant and does not mean that it doesn't have to be proven. And as Justice Hoffman articulated, we put in evidence that this defendant was the perpetrator. And now we have to explain why he was breaking into that window. And this evidence was sufficient to do that. That's why it came in. It didn't come in as propensity evidence. It came in as intent. The fact that it could be used as propensity evidence doesn't negate the fact that if there's another proper purpose for it, it still comes in. Furthermore, this evidence was not overly prejudicial. This evidence was very limited. The trial court specifically limited this, what the people could bring in as far as this defendant's statement. The only thing that we were allowed to bring in was that the defendant had admitted to committing burglars in the past for copper piping. All of that, I should say that all of the evidence against and accused generally is prejudicial. The issue here is whether it was overly prejudicial. And this was not. This was simply for the intent purposes. And the fact that there were similarities between what he said and what was actually done doesn't mean that this evidence was overly prejudicial. It means that it was probative because when we look at propensity evidence, I'm sorry, other crimes evidence, we have to have general similarities in order for it to be probative. So the more similarities generally, the more probative it is. And so in this case, that's what we have. It's similar, more probative, and not overly prejudicial. In fact, the trial court, to limit the prejudicial effect, prevented the people from putting in the fact that this defendant was breaking into buildings, burglarizing them, stealing copper pipes because he was addicted to drugs. So the court specifically saw that there could be an improper use of this evidence if that came in. So the court struck that and limited it to what the similarities were. If there were no... As I understand the picture, he didn't deny that he did this burglary. He merely said he didn't remember doing it. That is correct. He never denied it. So this wasn't one of those cases where the defendant said, one of the cases that the defendant relies on where he was arguing that he didn't commit the crime. He said he didn't remember it, and that is not the same as denying. But even if it were, as I argued, that doesn't... Regardless of his defense, intent is still an element that has to be proven. If there are no further questions, for the reasons stated here and those stated in our brief, we ask that you affirm the defendant's conviction. Thank you. Thank you, counsel. Thank you, Your Honor. I have one point to make, and that is if the state is right, then people being lonely is wrong. People being lonely notes that the only contested issue in this case was identity. That you're only being asked to decide who committed the burglary of a bond. Counsel, is that a case you cite?  Okay. So in Lonely, the question was identity and the burglary of a bond. And it said that the intent exception to the general ban on other crimes evidence arises in the context of offenses that challenge the intent or the state of mind which the defendant commits some act. Here the defendant did not... He didn't argue that it was an accident that he fell in. He did deny that he went in there to sleep. He did not claim that he went in there to do his laundry. He didn't testify, so he didn't say one way or another why he was there or if he was there. But his legal defense is that he was not there and is not on the state of mind offenses where you could bring in intent. But he did contend that the state could not prove any of the elements of the offense. He did say that. He did say that, and he was very clear. It was an if-then kind of argument. He said the state cannot show that the defendant was there. Therefore, it could not show that the defendant could not... Therefore, the state could not show the intent to commit a burglary because he was not there, because of what was very clear in his argument that I quoted in length in my reply brief. Now, if you look at all the state's cases where they're bringing this type of evidence, there are state of mind offenses. In Ilgen, this was a case where the defendant said that he passed out and shot his wife, quote, by accident. In the Stace Wilson case, which was a sex abuse case, the defendant said he was touching, feeling, and he was misinterpreted, and so when he touched her, it would have been accidental. In Harris, this was a sexual assault case, and he argued consent, which is a lack of innocent intent. So my argument would be that, A, there was no intentional intent, but, B, even if intent was come in, the intent of the perpetrator was so clear that any courtroom value of the other crimes evidence was marginal, and its most likely effect was for the jury to say this is a man of bad character and we're going to convict him. So unless there are other questions, we would ask that this court reverse and order a new trial. Thank you. Thank you. The case will be taken under advisement.